IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AARON MEDLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No.   12-cv-304-GPM-CJP |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT and RECOMMENDATION

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to District Judge G. Patrick Murphy pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff Aaron Medley seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) pursuant to **42 U.S.C. § 423**.

### Procedural History

Mr. Medley applied for SSI in June, 2009, alleging disability beginning on January 4, 2008. (Tr. 107).   The application was denied initially and on reconsideration.   After a hearing, Administrative Law Judge (ALJ) Don A. Harper denied the application on November 15, 2010. (Tr. 11-20).   Plaintiff's request for review was denied by the Appeals Council, and the November 15, 2010, decision became the final agency decision.   (Tr. 1).

Plaintiff has exhausted administrative remedies and has filed a timely complaint.

[1]

**Issue Raised by Plaintiff**

For his sole point, plaintiff argues that the ALJ misinterpreted and/or mischaracterized evidence favorable to him. This evidence consists of two letters from the Illinois Department of Human Services, Division of Rehabilitation Services, to the Social Security Administration. They are located at Tr. 365 and 405 in the administrative record.

**Applicable Legal Standards**

In order to receive SSI, a claimant must be disabled within the meaning of the applicable statutes.[1] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in

---

[1] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

***Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. See, *Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir. 1992);** ***Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant has a severe impairment but does not meet or equal a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. ***Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).** The Commissioner bears the burden of showing that there are a significant number of jobs in the economy that claimant is capable of performing. See, ***Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** ***Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, the question before the Court is not whether Mr. Medley was, in fact, disabled as of the relevant date; rather, this Court must determine

[3]

whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  See, **Books v. Chater**, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing **Diaz v. Chater**, **55 F.3d 300, 306 (7th Cir. 1995)**)).   This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   **Richardson v. Perales, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.   **Jens v. Barnhart**, 347 F.3d 209, **212 (7th Cir. 2003)**.    However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   See, **Parker v. Astrue, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Harper followed the five-step analytical framework described above. (Tr. 11-20).  He determined that Mr. Medley had not been engaged in substantial gainful activity since the alleged onset date, and that he had severe impairments of attention deficit hyperactivity disorder (ADHD), borderline intellectual functioning and adjustment disorder with anxiety features.   He determined that plaintiff's impairments do not meet or equal a listed impairment.   With respect to the letters from the Division of Rehabilitation Services, the ALJ said that the letters indicated that "it was generally acknowledged that he [plaintiff] should be able to find suitable employment with appropriate training."   (Tr. 17).

The ALJ found that Mr. Medley had the residual functional capacity to perform a full range of work at all exertional levels, limited to one-to-two step procedures and tasks and infrequent contact with co-workers and the public.   Plaintiff had no relevant past work.   Based on

[4]

evidence from a vocational expert, the ALJ found that plaintiff could do jobs which exist in the national economy, such as janitor/cleaner, hand packer and cleaner/hospital.

### The Evidentiary Record

The following summary is limited to the portions of the written record which are relevant to the issues presented.

**1.     Agency Forms**

Plaintiff was born in 1989, and was 19 years old on the alleged date of disability.  (Tr. 133).  He graduated from high school in 2008.  He was in special education classes.  (Tr. 130).

Plaintiff has never had a real job. (Tr. 127).   Since January, 2008, he had been helping his grandparents on their farm in exchange for a place to live.  (Tr. 168-169).  According to plaintiff, he was unable to work because of a learning disability, attention deficit disorder and anger problems.  (Tr. 127).

In a report filed in October, 2009, plaintiff said that the Department of Rehabilitation "told me to file for SSI."  (Tr. 147).  In January, 2010, plaintiff indicated that he saw Connie Kramer at the Division of Rehabilitation Services in 2009 for help "with finding a job."  He had no future appointments scheduled with her.  (Tr. 193).

**2.     Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing on August 30, 2010.   (Tr. 28).

Mr.  Medley testified that he was 20 years old at the time of the hearing.   He was on probation for a sexual abuse charge.  (Tr. 33).

He lived alone in a house on his grandparents' farm.   He had never worked.   He had put in job applications "all over" but had not heard anything back.  (Tr. 34-35).

An independent medical expert testified that plaintiff's condition did not meet or equal a

listed impairment.   She testified that the records indicated that IQ testing placed plaintiff in the low average to average range.   (Tr. 39-40).   She testified that plaintiff should be limited to following simple directions and doing simple, repetitive tasks with only limited contact with co-workers and the public.   (Tr. 45).

A vocational expert testified that a person with plaintiff's limitations would be capable of performing jobs which exist in significant numbers in the economy.

### 3.  Medical Records

In July, 2007, at the age of 17, plaintiff was admitted to McFarland Mental Health Center. Two charges of aggravated sexual assault of minors had been filed against him, and he had been found unfit to stand trial.   The admitting diagnoses were ADHD, expressive language disorder, stuttering, rule out disruptive disorder, rule out fetal alcohol syndrome, and learning disorder. (Tr. 290-291).   On his 18th birthday, November 22, 2007, he was transferred to the adult unit at Alton Mental Health Center.   (Tr. 278-280).   He was discharged as fit to stand trial on January 4, 2008.   His diagnoses on discharge were ADHD, learning disability and borderline intellectual functioning.   (Tr. 239-240).

In June, 2008, plaintiff pled guilty to one charge of criminal sexual assault of a minor. (Tr. 434).   He was sentenced to two years and four months of probation. (Tr. 319).

Mr. Medley was referred by probation to Egyptian Health Department for sex offender treatment.   (Tr. 458).   Mr. Medley was treated at Egyptian in 2008 and 2009.   (Tr. 406-477). An updated Comprehensive Mental Health Assessment was done at Egyptian in July, 2009.   At that time, he met the criteria for adjustment disorder with anxiety, which developed after the stressor of being charged with sexual assault.   He also met the criteria for ADHD, sexual abuse of a child, and borderline intellectual functioning.   (Tr. 341-342).

Plaintiff was released from treatment at Egyptian on April 1, 2010, as he had completed treatment. A worksheet completed on that date indicated that his functional status was "minimal impairment." It was noted that he had made a significant response to treatment. The counselor hand-wrote "needs a job" on the form. (Tr. 482).

**4.      Letters from Division of Rehabilitation Services**

Connie Kramer, a rehabilitation counselor at the Division of Rehabilitation Services, wrote a letter to the Social Security Administration on October 13, 2009. It stated:

> This letter is being written in support of Mr. Aaron Medley (DOB: 11/22/1989) of Vienna, Illinois. He is in need of financial assistance from your agency, until he is able to obtain suitable employment. Aaron is a current client of the Illinois Department of Rehabilitation, and has been both motivated and cooperative during the Rehab process. Due to his learning disabilities, Aaron requires multiple services to assist him to live independently and he needs job skills training to obtain and maintain suitable employment. Until he successfully completes training, Mr. Medley will need financial assistance to complete these services. Thank you very much for your consideration of this matter. (Tr. 365).

Ms. Kramer wrote another letter on March 31, 2010, as follows:

> I am writing this letter in support of Mr. Aaron Medley (DOB: 11/22/1989), to receive financial assistance from your agency, until he is able to obtain suitable employment. Aaron was a previous client of the Illinois Department of Rehabilitation. There are several issues he has to confront before being appropriate for competitive employment. Due to his learning disabilities, Aaron requires multiple services to assist him to live and work independently. He will need to participate in mental health therapy and pre-vocational skills. Once these services are completed, several rehabilitation services, such as mental health therapy, job skills training and placement, will assist him to obtain and maintain suitable employment.
>
> Until he successfully completes training and secures a job, Mr. Medley will definitely require financial assistance. Thank you very much for your consideration of this matter. (Tr. 405).

## Analysis

Plaintiff's only point is that the ALJ misinterpreted and/or mischaracterized the two letters from Ms. Kramer.

[7]

ALJ Harper did not ignore the two letters. At Tr. 17, he acknowledged receipt of the two letters and said that they "generally acknowledged that he should be able to find suitable employment with appropriate training."

According to plaintiff, the "real meaning" of Ms. Kramer's letters is that "plaintiff needs further training <u>before</u> he would be able to even enter the training period required for competitive employment in even the unskilled labor market." Doc. 16, p. 6 (emphasis in original). Plaintiff asserts that Ms. Kramer was opining that he needs to complete a program of "transition services" before he would be ready for full-time competitive employment, and points out that plaintiff's counsel questioned the vocational expert about "transition services" at the hearing. Doc. 16, p. 7.

Notably, Ms. Kramer, who has an M.S. degree and is a Rehabilitation Counselor, Senior, did not use the phrase "transition services." Plaintiff's counsel introduced the concept of transition services at the evidentiary hearing. However, there is no evidence in the record that plaintiff required transition services at the time of the hearing. In fact, Ms. Kramer's second letter described Mr. Medley as a "previous client." (Tr. 405). There is no evidence that plaintiff was receiving any kind of services from the Department of Rehabilitation at the time of the hearing.

ALJ Harper's interpretation of Ms. Kramer's letters was reasonable. As he noted, at the time of the hearing, plaintiff lived alone, visited family members every day, helped with household chores, drove a vehicle, was able to go out as needed, and engaged in numerous hobbies. (Tr. 14). The ALJ also noted that the final treatment record, dated April 1, 2010, indicated that plaintiff "had reached maximum rehabilitative improvement with only minimal functional limitations." (Tr. 18).

It is well-settled that the reviewing court cannot substitute its judgment for that of the ALJ by reconsidering the facts or reweighing the evidence. ***White v. Barnhart***, **415 F.3d 654, 659 (7**[th]

Cir. 2005); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).   That is precisely what plaintiff is asking the Court to do here.

Plaintiff cites three cases in support of his argument that factual mistakes, omissions and mischaracterizations by the ALJ require remand.   All of the cases are distinguishable.   In *Golembiewski v. Barnhart*, 322 F.3d 912, 917-918 (7th Cir. 2003), the ALJ erred by saying that an MRI showed "no herniation" when it actually showed "probable herniation and he ignored evidence of plaintiff's bowel and bladder dysfunction, inability to bend, and propensity to drop objects because of tingling in his hands.   In *Sarchet v. Chater*, 78 F.3d 305, 307-309 (7th Cir. 1996), the ALJ's decision revealed "a pervasive misunderstanding of the disease" of fibromyalgia and she made factual errors in describing the testimony of the plaintiff and of the vocational expert. In *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003), the ALJ erroneously said there was "no medical evidence" of a hand problem where the record contained evidence that plaintiff had carpal tunnel syndrome.   In all three cases relied upon by plaintiff, the ALJ made objective errors with regard to the evidence.   These cases hold that a decision that rests on an objectively erroneous understanding of the record is not supported by substantial evidence.   In the present case, however, plaintiff has not identified an objective error; rather, he is arguing for a different interpretation of Ms. Kramer's letters.

The ALJ's interpretation of Ms. Kramer's letters was reasonable.   It was certainly not objectively erroneous.   Plaintiff's interpretation of the letters may be reasonable as well, but it is the function of the ALJ, and not of the reviewing court, to choose between two reasonable interpretations of the evidence.   *White, supra,* 415 F.3d at 659; *Jens, supra,* 347 F.3d 209 at 212.

Plaintiff has not demonstrated that the ALJ's decision is not supported by substantial

[9]

evidence or that the ALJ made any errors of law.

### Recommendation

For the reasons discussed above, this Court recommends that the final decision of the Commissioner of Social Security denying plaintiff's application for SSI be **AFFIRMED**, and that judgment be entered in favor of defendant.

Objections to this Report and Recommendation must be filed on or before February 25, 2013.

**Submitted:   February 7, 2013.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITD STATES MAGISTRATE JUDGE**
